IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 14-00291-CG |
| ) | |
| KIMBERLY SMITH HASTIE, ) | |
| RAMONA MCARDLE YEAGER, and ) | |
| JOHN MELVIN HASTIE JR. ) | |

**UNITED STATES' REPLY TO DEFENDANT HASTIE'S RESPONSE TO MOTION FOR MODIFICATION OF HASTIE'S CONDITIONS OF RELEASE**

Comes now the United States, by and through the United States Attorney for the Southern District of Alabama, and files this reply to defendant Kimberly Smith Hastie's response, (doc. 89), to the United States' motion requesting that the Court modify Hastie's conditions of release. (Doc. 78).

**Discussion**

**A.   Hastie should be prohibited from conducting witness interviews of Mobile County License Commission employees at the License Commission during the office's business hours.**

Hastie cites no law to support her position that her counsel is entitled to conduct witness interviews of License Commission employees at the License Commission during the office's business hours. No statute or legal precedent could reasonably bolster such an assertion.

The facts contravene Hastie's claim that the interviews were "completely voluntary." (Doc. 89 at 1). License Commission employees, unrepresented by counsel and working under Hastie, were summoned without advance notice by Hastie's secretary to meet with Hastie's lawyer at the workers' place of employment (which is supervised by management) to discuss

1

Hastie's legal matters. The interviewees could not reasonably be expected to speak freely about their boss in such an environment. Given the lack of prior notice to interviewed employees, the entire interview process appears to have been flawed and surreptitious. As evidence of the interviews' supposed voluntary nature, Hastie declares: "No complaints or indications of employee uneasiness were communicated to defense counsel by employee …." (Doc. 89 at 2). Assuming arguendo this statement is true, its explanation is straightforward: interviewees felt intimidated by the interviews, and, given the hierarchies in the office, they would have hesitated to come forward to the persons causing the intimidation. In a word, the interviews were hardly benign or voluntary, as attested by the government's investigation of the matter.

Notwithstanding her entreaties to minimize her liability, Hastie is entirely responsible for the witness interviews. Several considerations underscore this point, as outlined below.

First, while she claims she was not present at the License Commission during the interviews, (doc. 89 at 1), they occurred with her knowledge and at her direction. Regardless of Hastie's own whereabouts, her private attorney successfully entered the License Commission building when it was closed to the public. Given his status as Hastie's lawyer, his entry suggests prior coordination with Hastie. In addition, Hastie's personal secretary, who works for Mobile County, had employees ushered into a conference room to meet with Hastie's private attorney. It is highly unlikely Hastie's secretary was acting on her own accord. The simpler and more likely explanation: she was acting at Hastie's behest.

Second, Hastie's portrayal that she "would not be made aware of any employee's participation" in the interviews and that "all employees were informed that counsel would not discuss the substance of any conversation with Mrs. Hastie," (id. at 1-2), rings hollow. The

whole point of witness interviews is for a lawyer and his client to gain, sift through, and share information about possible defenses before trial. It would be potentially unethical for Hastie's lawyer <u>not</u> to share such information with Hastie. For instance, the comment to Rule 1.3 of the Alabama Rules of Professional Conduct states: "A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Lawyers are duty bound to their clients to act with diligence and zeal. It is hard to believe Hastie's attorney would not share with his client information gathered from witness interviews, especially if any material insights were gleaned.

Third, the interviews occurred at the License Commission, which Hastie governs. She maintains that "[t]he decision to interview employees at the License Commission was made by defense counsel—not Mrs. Hastie—and was designed to cause the least disruption possible to the operations of the organization and the lives of its employees." (Doc. 89 at 2). Lest we forget, however, Hastie's attorney works for Hastie. Given his role as her agent, his reasoning to attempt to extricate himself from his client is specious. Moreover, the interviews occurred during the License Commission's business hours. The interviews did in fact disrupt "the operations of the organization and the lives of its employees." (Doc. 89 at 2). The interviews took time away from people's work. The interviewed employees are not paid to be Hastie's witnesses - they are paid to work for Mobile County. The United States is unaware of any efforts by Hastie to reimburse Mobile County for the time spent on interviewing government employees during government hours.

The Alabama Rules of Professional Conduct requires lawyers to respect the rights of third persons. Rule 4.4(a) states: "In representing a client, a lawyer shall not use means that

3

have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." The comment to Rule 4.4(a) observes in part: "Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons." (Emphasis added). While pretrial witness interviews are proper and encouraged, they are not without restrictions. The method and nature of such interviews are important. In Hastie's case, the setting (the License Commission), time (office business hours), and nature (no prior notice; involuntary) of Hastie's witness interviews imposed unnecessary and improper burdens upon third persons.

The Alabama Rules of Professional Conduct also regulates how lawyers deal with unrepresented persons. Rule 4.3(a) states:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

The comment to Rule 4.3(a) underscores that "[a]n unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law, even when the lawyer represents a client." Against the backdrop of Rule 4.3(a), Hastie's actions are troubling. The License Commission employees (all of whom were unrepresented by counsel of their own during the interviews) were

4

summoned by Hastie to meet with Hastie's counsel without prior notice of the interviews. The interviewees also had no clear understanding of the purpose of the interviews.

Witnesses and whistleblowers are afforded protections under state and federal law. Witness intimidation, which involves threats directed at prospective witnesses, is a felony in Alabama. Ala. Code § 13A-10-123. Witness tampering and bribing witnesses are also proscribed acts under state law. See Ala. Code §§ 13A-10-124 and 121. Similarly, federal law contains numerous statutes protecting witnesses. See, e.g., 18 U.S.C. §§ 1512 and 13. As for whistleblowers, the Whistleblower Protection Act is one of about forty federal whistleblower and anti-retaliation laws. Speech by public employees may also be protected on First Amendment grounds. In June 2014, the United States Supreme Court held unanimously that a public employee's sworn testimony in a judicial proceeding on a matter of public concern is entitled to First Amendment protection. Lane v. Franks, 134 S. Ct. 2369 (2014). Lane concerned retaliation against a whistleblower who had testified about public corruption and misuse of state funds in Alabama.[1]

Given the legal framework protecting the speech of public employees, the interviewees of January 21, 2015 are hardly "agent provocateurs imbedded within the License Commission."

---

[1] Edward Lane, a director of an underprivileged youth program operated by Central Alabama Community College, testified in federal court about fraud committed by a program employee, Suzanne Schmitz, who was also a state representative. Id. at 2375. The community college's president at the time, Steve Franks, subsequently terminated Lane. Id. at 2376. Lane sued Franks under 42 U.S.C. § 1983, alleging that Franks had violated the First Amendment by firing Lane in retaliation for Lane's testimony against Schmitz. Id. The Supreme Court observed: "The content of Lane's testimony—corruption in a public program and misuse of state funds— obviously involves a matter of significant public concern." Id. at 2380. Finding that Lane's testimony was not unprotected employee speech, the Supreme Court held that "the First Amendment [ ] protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." Id. at 2374-75.

(Doc. 89 at 3). Rather, they are public servants who seek to do their job free of public corruption and intimidation. Indeed, the License Commission itself espouses such an atmosphere. For instance, the License Commission Employee Manual, dated August 1, 2012, stresses the importance of "opening the lines of communication" within the License Commission and promoting a harassment-free work environment. See Mobile County License Commission Employee Policy Manual, at 1, 25.

Ethics laws prohibiting the use of public office for personal gain have been invoked in recent prosecutions of Alabama state officials. In October 2014, for example, Alabama's Speaker of the House Michael Hubbard was charged with various ethics law violations, including four counts of violating § 36-25-5(a) and one count of violating § 36-25-5(c). In April 2014, Gregory David Wren, a former representative from the 75th District, pleaded guilty to knowingly using his office as a member of the Alabama Legislature to obtain confidential information and personal financial gain. Similarly, Hastie should be enjoined from using her office for personal gain, which, in her case, involves trial preparation and the avoidance of financial loss vis-à-vis restitution payments.

Alabama case law is replete with examples of public servants misusing their positions of office for personal gain in violation of the Alabama Ethics Law. See, e.g., Rampey v. State, 415 So. 2d 1184 (Ala. Crim. App. 1982) (court affirmed conviction of individual who, while mayor, bought lumber for personal use, had invoice doctored, and instructed city clerk to pay for purchase, among other unlawful acts); Fitch v. State, 851 So. 2d 103 (Ala. Crim. App. 2001) (court upheld conviction of county commissioner for using public office for personal financial gain, aiding and abetting another in using public position for personal gain, and theft of county

funds, in connection with closing of landfill); Hunt v. State, 642 So. 2d 999 (Ala. Crim. App. 1993) aff'd sub nom. Ex parte Hunt, 642 So. 2d 1060 (Ala. 1994) (governor's conviction for use of office for personal financial gain was based on evidence he used funds solicited postelection on behalf of nonprofit corporation to pay note and mortgage on his farm); Chandler v. State, 615 So. 2d 100 (Ala. Crim. App. 1992) (defendant who was mayor had violated state ethics law by arranging for sale of property owned by him to his town, without disclosing that he was owner); Langham v. State, 662 So. 2d 1201 (Ala. Crim. App. 1994) (evidence was sufficient to sustain convictions of defendants, who were members of City of Prichard waterworks and sewer board, of using their official positions to obtain direct personal financial gain); Hill v. State, 651 So. 2d 1128 (Ala. Crim. App. 1994) (court affirmed conviction of police officer of using his position for direct personal financial gain in violation of Ethics Act in connection with his taking of money from motorist's wallet); and Britain v. State, 518 So. 2d 198, 199 (Ala. Crim. App. 1987) (court upheld conviction of Alabama State Docks maintenance supervisor who caused various invoices to be paid by the state docks).

**B.    Hastie should be enjoined from accessing records of License Commission employees without proper legal process.**

License Commission records are public records that belong to the government, not Hastie in her capacity as License Commissioner. As such, Hastie should be required to use legal process to obtain License Commission records. Hastie cites no law to the contrary.

The Code of Alabama defines public records:

As used in this article, the term "public records" shall include all written, typed or printed books, papers, letters, documents and maps <u>made or received in pursuance of law by the public officers of the state, counties, municipalities and other subdivisions of government in the transactions of public business</u> and shall also include any record authorized to be made by any law of this state belonging or pertaining to any court of record or any other public record authorized by law or

> any paper, pleading, exhibit or other writing filed with, in or by any such court, office or officer.

Ala. Code § 41-13-1 (emphasis added).

License Commission records meet the above definition of public records. They are, therefore, not for Hastie's unencumbered personal use. Hastie maintains that License Commission employees "have no legitimate ownership or privacy interests in" their government e-mail accounts, (doc. 89 at 3), yet she neglects to mention that she too is a public servant and that she does not own the accounts.

Ownership should not be conflated with custody, which Hastie may have with respect to License Commission records given her position as License Commissioner. See Ala. Code § 36-12-41. Per Alabama's Open Records Act, Hastie, as a public officer, has a responsibility to maintain and preserve public records. Ala. Code § 36-12-2. Citizens have rights to inspect and copy public writings. Ala. Code § 36-12-40; Water Works & Sewer Bd. of City of Talladega v. Consol. Pub., Inc., 892 So. 2d 859, 862 (Ala. 2004); Allen v. Barksdale, 32 So. 3d 1264, 1274 (Ala. 2009) ("Citizens are entitled to information regarding the affairs of their government. Alabama's Open Records Act first appeared in the 1923 Code of Alabama and represents a long history of openness … The statutory and judicially created exceptions generally protect an individual's privacy, the integrity of a criminal investigation, public safety and security, or privileged information … [t]he purpose of the Open Records Act is to permit the examination of public writings and records."). The law prohibits the use of state-owned property for political purposes. Ala. Code § 36-12-61. The law also prohibits the misuse of confidential information by a public servant. Ala. Code § 13A-10-82. In short, Hastie, as an elected public official, has

responsibilities to the public to safeguard public records. They are not hers to access and use at any time for any purpose of her choosing.

Furthermore, the need for legal process to access License Commission records may be heightened by the fact that the information contained in any records requested by Hastie may contain personal information protected by federal and state law. The Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721 et seq., states that, subject to certain limited exceptions, "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information [ ] from a motor vehicle record."[2]  18 U.S.C. § 2722(a). A separate provision of the Act specifically proscribes officers, employees, and contractors of state departments of motor vehicles from knowingly disclosing that same information. § 2721(a). Disclosure of personal information is permissible "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court."[3]  § 2721(b)(4).

## Conclusion

Hastie cites no statute or case in its response. Truth be told, it was improper for Hastie's lawyer to enter a government building during business hours and to coordinate with Hastie's secretary to usher government employees into a conference, one at a time, to conduct witness

---

[2] Hastie is alleged to have violated the DDPA. (Doc. 45 at ¶¶ 40-45). Her alleged disclosures of e-mail addresses of Mobile County residents for political purposes may also constitute violations of Alabama state law concerning use of public property. See, e.g., Ala. Code § 36-12-61 (use, etc., of state-owned property for promotion or advancement of interests of candidates for public office); Ala. Code § 41-13-7 (identifying information of state employees on records available for public inspection).

[3] The statute does not specify whether process is required for such a disclosure; the reference to process in the statute may suggest a preference for its use in connection with court proceedings.

interviews about her criminal trial.  Moreover, Hastie's arguments about accessing employees' e-mail accounts and other government records are meritless.  Although Hastie has every right to interview witnesses and obtain documents in the course of her trial preparation, she cannot do so through impermissible means.

Hastie has allegedly fostered a negative work atmosphere filled with veiled and subtle threats.  She appears to be continuing to do so post-indictment.  Nevertheless, the problem is not limited to her allegedly cultivating a culture of intimidation.  She has also used Mobile County resources (e.g., property, time, services) as though they were her own - for her personal gain and at Mobile County's expense.

For all the aforementioned reasons, the United States respectfully asks the Court to modify Hastie's conditions of release per its previous motion.

Respectfully submitted on February 24, 2015.

KENYEN R. BROWN
UNITED STATES ATTORNEY

By: */s/ GREGORY A. BORDENKIRCHER*
Gregory A. Bordenkircher (BORDG3301)
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845

By: */s/ SINAN KALAYOGLU*
Sinan Kalayoglu (kalas9469)
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 24, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record for the defendants.

                                   */s/ GREGORY A. BORDENKIRCHER*
                                   Gregory A. Bordenkircher
                                   Assistant United States Attorney


                                   */s/ SINAN KALAYOGLU*
                                   Sinan Kalayoglu
                                   Assistant United States Attorney