IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 14-00291-CG-N |
| | ) | |
| KIMBERLY SMITH HASTIE, | ) | |
| and RAMONA MCARDLE YEAGER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER

This matter is before the Court on Defendant Hastie's motion to dismiss (Doc. 126), and the Government's response (Doc. 130). For the reasons set forth herein, the motion is due to be denied.

### BACKGROUND

A grand jury indicted defendants Kimberly Hastie and Ramona Yeager on nine counts related to an alleged conspiracy "to trick and deceive the County Commission and the citizens of Mobile County by falsifying invoices and misappropriating funds." (Doc. 1, p. 4). Hastie is the Mobile County License Commissioner (Doc. 1, p. 2), and Yeager is the Mobile County Deputy License Commissioner. (Doc. 1, p. 3). The charges against Hastie and Yeager include one count of conspiracy (18 U.S.C. § 1349), five counts of wire fraud (18 U.S.C. § 1343), and three counts of mail fraud (18 U.S.C. § 1341). (Doc. 1, pp. 3 – 12). The same indictment charged Hastie with six counts related to Hobbs Act Extortion under Color of Official Right (18 U.S.C. § 1951(a)), and one count of making a false statement to a Federal Bureau of Investigation agent regarding activities at the

License Commission (18 U.S.C. § 1001) (Doc. 1, pp. 13 – 15).

Approximately two months later, the Government filed a superseding indictment, in which a grand jury indicted Hastie on an additional count: prohibited release and use of personal information from state motor vehicle records (18 U.S.C. § 2721(a)) (Doc. 45, pp. 15 – 17).[1] The superseding indictment alleges Hastie "knowingly disclosed and otherwise made available to persons and entities . . . personal information, as defined in 18 U.S.C. § 2725(3), about individuals obtained by the License Commission in connection with motor vehicle records." (Doc. 45, p. 15). The indictment further describes how Hastie allegedly obtained 30,853 e-mail addresses from License Commission records, had them stored on a flash drive, and asked a third party to send a message to each e-mail address regarding her support for a certain mayoral candidate. (Doc. 45, p. 17).

Hastie now asks the Court to dismiss the prohibited release of information charge against her because e-mail addresses are not "personal information" as defined in 18 U.S.C. § 2725, and no one is required to give their e-mail address to the License Commission. (Doc. 126, pp. 2 – 3).  In response, the Government argues the definition of "personal information" in the Driver's Privacy Protection Act extends beyond the items explicitly listed in the statute, and includes e-mail addresses. (Doc. 130, p. 1). The Government further argues that customers must provide their e-mail address to the License Commission if they wish to do online

---

[1] The superseding indictment also charged defendant Kimberly Hastie and her spouse with an additional count, which the Court severed from this case. (Doc. 121).

business with the Commission. The Government points to the online vehicle tag renewal process, which requires an e-mail address for the transaction. (Doc. 130, p. 5). Because e-mail addresses are personal information that customers must give to the License Commission, the Government asks the Court to deny Hastie's motion to dismiss. (Doc. 130, pp. 5 – 6).

## ANALYSIS

To obtain a driver's license or register a vehicle, state DMVs, as a general rule, require an individual to disclose detailed personal information, including name, home address, telephone number, Social Security number, and medical information. Maracich v. Spears, 133 S. Ct. 2191, 2198 (2013). Concerned that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons, Congress enacted the Driver's Privacy Protection Act of 1994 ("DPPA"). 18 U.S.C. §§ 2721–2725.[2] The DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." See

---

[2] As the Supreme Court mentions in Maracich, the legislative history of the DPPA makes clear that the law is intended to protect personal information and customer privacy. See, e.g., Congressional Record, Senate Proceedings & Debates of the 103rd Congress, First Session Tuesday, Nov. 16, 1993; 139 Cong. Rec. S15745-01, 1993 WL 470986 ("The right to privacy, without which the Americans are not secure in their own homes, is seriously threatened. It is easy for anyone anywhere to access information as personal as your address and phone number, even if they are not listed in the telephone directory. Even your Social Security number is available, and the chief agent giving out this kind of information is the very government that is supposed to protect its citizens." Statement of Chuck Robb, Senator of Virginia).

Reno v. Condon, 528 U.S. 141, 144 (2000).

The DPPA provides that, unless one of its exceptions applies, a state DMV "shall not knowingly disclose or otherwise make available" "personal information" and "highly restricted personal information." §§ 2721(a)(1)-(2). "[P]ersonal information" is "information that identifies an individual, including [a] ... driver identification number, name, address ..., [or] telephone number, ... but does not include information on vehicular accidents, driving violations, and driver's status." § 2725(3). "[H]ighly restricted personal information" is defined as "an individual's photograph or image, social security number, [and] medical or disability information." § 2725(4). The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." § 2722(a). A person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter" is civilly liable to the individual to whom the information pertains, or may face criminal fines. §§ 2723, 2724(a).

The DPPA's disclosure ban is subject to fourteen exceptions set forth in § 2721(b), for which personal information "may be disclosed." In this case, however, Hastie does not argue she released the information pursuant to a statutory exception. Instead, Hastie argues e-mail addresses voluntarily provided to the License Commission are not "personal information" as defined by the DPPA. (Doc. 126). Hastie notes the DPPA defines "personal information" as "information that identifies an individual, *including* an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code),

4

telephone number, and medical or disability information." 18 U.S.C. § 2725(3) (emphasis added). Nowhere in this definition, Hastie argues, are e-mail addresses. (Doc. 126, p. 2).[3]

In civil cases, the Supreme Court instructs us that the word "including" signifies an illustrative, but not exhaustive, statutory construction. See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) ("The text employs the terms 'including' and 'such as' in the preamble paragraph to indicate the 'illustrative and not limitative' function of the examples given…"). Although criminal statutes are more strictly construed, such construction "does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." McElroy v. United States, 455 U.S. 642, 658 (1982) (citation omitted). Criminal cases, therefore, follow similar statutory construction rules. See Yates v. United States, 135 S. Ct. 1074, 1081-82 (2015) (analyzing statutory construction in criminal context, and noting "a word's usage accords with its dictionary definition"); see also United States v. Williams, 553 U.S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated").

In this case, the word "including" is used in a list of terms describing personal

---

[3] "E-mail" refers to electronic mail. An e-mail address identifies an e-mail box to which e-mail messages are delivered. E-mail has largely replaced the use of telephone calls and paper mail as a method of communication. See generally Charlotte Decker, Cyber Crime 2.0: An Argument to Update the United States Criminal Code to Reflect the Changing Nature of Cyber Crime, 81 S. Cal. L. Rev. 959 (2008) (discussing rise of computer age, noting approximately 140 million Americans regularly use e-mail); Alexander Galicki et. al., Computer Crimes, 51 Am. Crim. L. Rev. 875, 878 (2014) (discussing computer related crime).

identifiers; it signifies information that the state licensing authorities collect related to personal information. It does not signal an exhaustive list of information that licensing authorities must refrain from disclosing. See Yates, 135 at 1085 (2015) (discussing how a word is known by the company it keeps). Read simply and in the context of the statute, personal information includes information collected by the state licensing authority that identifies an individual. 18 U.S.C. § 2725(3). This includes personal e-mail addresses. Cf. Gov't Accountability Project v. U.S. Dep't of State, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) judgment entered 2010 WL 1245698 (D.D.C. Mar. 29, 2010) ("Here, the private individuals mentioned in these records have a clear privacy interest in avoiding the disclosure of their personal email addresses."); Capp v. Nordstrom, Inc., No. 2:13-CV-00660-MCE-AC, 2013 WL 5739102, at *6 (E.D. Cal. Oct. 22, 2013) (concluding e-mail addresses are personal identification information, collecting cases finding same).

Furthermore, the Court notes Congress drafted and enacted the DPPA in 1994, before e-mail addresses overwhelmingly took the place of mailing addresses and telephone numbers, which are protected by the statute. Hastie's argument that e-mail addresses are not "personal information" because they are not explicitly listed in the DPPA ignores both common sense and the evolution of electronic media and communication over the past twenty years. See, e.g., Riley v. California, 134 S. Ct. 2473, 2484 (2014) ("A smart phone of the sort taken from [defendant] was unheard of ten years ago; a significant majority of American adults now own such phones."); Missouri v. McNeely, 133 S. Ct. 1552, 1562 (2013) ("Well over a majority of States allow police officers or prosecutors to apply for search warrants remotely

6

through various means, including telephonic or radio communication, electronic communication such as e-mail, and video conferencing."). Under the DPPA, e-mail addresses are personal information, and must be afforded the same protection as telephone numbers and mailing addresses. Thus e-mail addresses that customers give to the License Commission in the course of business are "personal information" that the Commission is not legally entitled to disclose absent an enumerated DPPA exception.

Hastie also argues customers voluntarily disclosed their e-mail addresses to the License Commission; therefore the DPPA does not protect this information. (Doc. 126, p. 3). Again, this ignores the reality of doing business in an electronic age. To conduct online business with the License Commission, an e-mail address is required. Customers arguably could transact all of their License Commission business in person, but that would burden drivers as much as it would burden the Commission. Additionally, forcing customers to transact business with the License Commission in person simply to protect against the unauthorized disclosure of their personal e-mail address clearly goes against the purpose of the DPPA.

Hastie further argues there is no privacy interest on the face of an e-mail address, rather than the content of the e-mails contained within an account. (Doc. 126, p. 2). The Court does not find this argument persuasive. First, there is as much of a privacy interest in an e-mail address as there is a telephone number, which is expressly protected by the DPPA.[4] Second, Courts have afforded protection to e-mail

---

[4] Before the proliferation of e-mail addresses and cellular phone numbers, telephone companies printed telephone numbers in phone books and made them
(Continued)

7

addresses, without reaching into the content of an account. Such protection is seen through the routine prosecution of hackers stealing e-mail addresses and related forms of identity theft. See, e.g., Dept. of Justice Press Release, Five Indicted in New Jersey for Largest Known Data Breach Conspiracy, July 25, 2013, *available at*: http://www.justice.gov/opa/pr/five-indicted-new-jersey-largest-known-data-breach-conspiracy. Hastie's motion to dismiss is thus without merit. As a result, the Court concludes personal e-mail addresses are protected under the DPPA.

## CONCLUSION

In light of the foregoing, Defendant Hastie's motion to dismiss (Doc. 126) is **DENIED**.

**DONE and ORDERED** this 19th day of March, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

readily available. Congress nevertheless included telephone numbers as protected "personal information" in the DPPA. The DPPA also protects plainly observable physical characteristics by including a person's photograph as "personal information." By comparison, e-mail addresses are perhaps more sensitive and deserving of protection than telephone numbers and physical characteristics captured in a photograph.