**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CRIMINAL NO. 14-00291-CG-N** |
| | ) | |
| **KIMBERLY SMITH HASTIE,** | ) | |
| **and RAMONA MCARDLE YEAGER,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendants' motion to suppress evidence obtained from or through the Mobile County License Commission (Docs. 127, 128), and the Government's response in opposition. (Doc. 136). For the reasons set forth herein, the motion is due to be **DENIED**.

## BACKGROUND

A grand jury indicted defendants Kimberly Hastie and Ramona Yeager on nine counts related to an alleged conspiracy "to trick and deceive the County Commission and the citizens of Mobile County by falsifying invoices and misappropriating funds." (Doc. 1, p. 4). Hastie is the Mobile County License Commissioner (Doc. 1, p. 2), and Yeager is the Mobile County Deputy License Commissioner. (Doc. 1, p. 3). The charges against Hastie and Yeager include one count of conspiracy, five counts of wire fraud, and three counts of mail fraud. (Doc. 1, pp. 3 – 12). The same indictment charged Hastie with six counts related to Hobbs Act Extortion under Color of Official Right, and one count of making a false

statement to a Federal Bureau of Investigation agent regarding activities at the License Commission. (Doc. 1, pp. 13 – 15). Approximately two months later, the Government filed a superseding indictment, in which a grand jury indicted Hastie on two additional counts. (Doc. 45, pp. 15 – 21).[1]

Defendants now ask the Court to suppress "any evidence obtained by law enforcement from or through the Mobile [County] License Commission, its property, and/or its resources in the absence of a search warrant or a subpoena." (Doc. 127, p. 1). Defendants claim that the Fourth Amendment guarantees them protection from unreasonable searches and seizures, and "Federal law enforcement has repeatedly used License Commission contractors and employees to circumvent the Fourth Amendment protections and obtain information outside the Federal Rules of Criminal Procedure." (Doc. 127, p. 1). Defendants identify in their motion four specific instances when FBI agents obtained License Commission records from other employees without providing a warrant or subpoena for the material. (Doc. 127, p. 3).

In response, the Government argues Defendants have not established standing to assert a Fourth Amendment violation. (Doc. 136, p. 1). Specifically, the Government contends Defendants have "not satisfied [their] burden of demonstrating a legitimate expectation of privacy in the area searched." (Doc. 136, p. 2). Even if Defendants have standing, the Government argues other License

---

[1] The Court previously severed from this case one of the counts against Hastie in the superseding indictment. (Doc. 121).

Commission employees gave voluntary and intelligent consent for the searches at issue. (Doc. 136, p. 3). For these reasons, the Government asks the Court to deny Defendants' motion.

## ANALYSIS

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Amendment thus protects individuals against unreasonable searches of "their persons [and] houses" and is considered a personal right. See Katz v. United States, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places"). A defendant can urge the court to suppress evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates the challenged search or seizure violated her Fourth Amendment rights. See United States v. Padilla, 508 U.S. 77, 81 (1993) (collecting cases regarding Fourth Amendment standing).

Generally, "a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." Mancusi v. DeForte, 392 U.S. 364, 370 (1968) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 – 29 (1967)). But property used for commercial purposes is treated differently from residential property for Fourth Amendment purposes. "An expectation of privacy in commercial premises . . . is less than, a similar expectation

in an individual's home." New York v. Burger, 482 U.S. 691, 700 (1987) (citation omitted). Only in limited circumstances may a worker claim Fourth Amendment protection over items and areas in her own workplace. See, e.g., O'Connor v. Ortega, 480 U.S. 709, 716 – 17 (1987) (discussing expectations of privacy in a government office); Katz, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection").

To challenge a search on Fourth Amendment grounds, the accused must demonstrate a legitimate expectation of privacy in the area searched. See United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (holding that the individual challenging the search has the burden of both proof and persuasion). If the accused successfully establishes an expectation of privacy, the burden then shifts to the government to prove that the search was reasonable based upon a recognized exception to the warrant requirement. United States v. Bachner, 706 F.2d 1121, 1125–26 (11th Cir. 1983). A person has a legitimate expectation of privacy if (1) she has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable. United States v. Segura–Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). "A legitimate expectation of privacy [must] be proven by factors beyond mere possession, such as a right to exclude or a right to privacy." United States v. Espinosa–Orlando, 704 F.2d 507, 512 (11th Cir. 1983) (citations omitted).

In this case, Defendants do not show they had a legitimate expectation of privacy in the area searched or in the records they seek to suppress. Indeed,

Defendants state in their motion that the documents "were the property of the License Commission." (Doc. 127, p. 3).  Defendants make no claim that any personal documents were searched or provided to the FBI.   License Commission documents do not belong personally to the Defendants, thus Defendants do not have an expectation of privacy in them.  Defendants have not demonstrated standing.

The Government's response further argues that License Commission records received by the FBI were obtained with the consent of the personnel that provided those records.  The court is not in a position to make a finding on this claim without an evidentiary  hearing.   However, because the defendants have not demonstrated standing, no hearing is necessary.

In sum, Defendants show no basis for finding a Fourth Amendment violation. Defendants do not claim the records belonged to them, or that the records related to personal affairs rather than work-related matters. Nor do Defendants argue that they stored the records in a private location within the License Commission

## CONCLUSION

After careful consideration, Defendants' motion to suppress (Doc. 127) is **DENIED**.

**DONE and ORDERED** this 23rd day of March, 2015.


/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE