IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 14-00291-CG |
| | ) | |
| KIMBERLY SMITH HASTIE and | ) | |
| RAMONA MCARDLE YEAGER | ) | |

**REPLY TO RESPONSE TO MOTION TO DISQUALIFY DEFENSE COUNSEL**

Comes now the United States, by and through the United States Attorney for the Southern District of Alabama, and files this reply to defendant Kimberly Smith Hastie's response to the United States' motion to disqualify defense counsel. Doc. 145. As previously discussed, the issues concerning Hastie's use of the "$1.25 fund" are contested and material for trial. See Docs. 40, 129, 146. In her attempt to enter self-serving statements into evidence and rely upon an advice of counsel defense without testifying, Hastie, not the United States, has made Buzz Jordan a necessary trial witness. The United States' disqualification motion is made out of an abundance of caution in an effort to avoid conflicts of interest at trial.

**Background**

Commencing in early 2014, Hastie sought to merge the offices of the License and Revenue Commissions. Doc. 45, ¶ 18. Around May 29, 2014, Hastie paid a political lobbyist, Jonathan Gray of Strategy, Inc., $10,000 for his lobbying services on her behalf with money from the $1.25 fund, in violation of Alabama law. See id., ¶¶ 24-26. Around July 7, 2014, Hastie denied paying Gray for his services. See Jason Johnson, License commissioner discusses effort to merge offices, Lagniappe (July 9, 2014), http://lagniappemobile.com/license-commissioner-discusses-effort-merge-offices/ ("When asked about Gray's involvement with her

1

office, Hastie said July 7 there were no other public relations services being paid for with licensee commission funding."). Hastie later reversed her position. Id. ("More than two hours later, Hastie contacted Lagniappe and said she was 'wrong about Gray's compensation' and had since been presented with an itemized list of charges for his services. 'I had forgotten that we had ever paid Jon Gray,' she said."). On July 16, 2014, the FBI executed a search warrant at the License Commission and found evidence of criminal activity. On July 17, 2014, the FBI interviewed Mr. Gray. On July 26, 2014, Mr. Gray returned the $10,000 payment to the License Commission. On August 5, 2014, Mr. Jordan wrote Hastie a letter stating in pertinent part:

> Upon review of the $1.25 Act, it is my legal opinion that Strategy, Inc., was not eligible to be paid from the $1.25 account for the services Strategy, Inc. provided at the request of the Mobile County License Commissioner's office to attempt to combine the Mobile County License Commissioner's office with the Mobile County Revenue Commissioner's office in an effort to save Mobile County money by their combination. I have discussed this matter with Strategy, Inc. and it has agreed to reimburse the Mobile County License Commissioner's $1.25 account for the amount that his company was paid for said services.[1]

Doc. 40, Exhibit A.

On January 21, 2015, the United States moved for a ruling that the letter be deemed admissible evidence. Doc. 40. On January 28, 2015, Hastie responded in pertinent part:

> Defendant Hastie's counsel agree and join in the [United States'] motion as to the admissibility of the letter as the defense will also introduce the letter as a defense exhibit at trial as evidence that Defendant Hastie made a "mistake" in paying the invoice from the wrong account but the payment was for the License Commissioner's Office legal purpose.

Doc. 43 at 1.

---

[1] While Mr. Jordan writes that Strategy, Inc. has "agreed to reimburse the Mobile County License Commissioner's $1.25 account," in truth Mr. Gray returned the $10,000 payment on July 26, ten days before Mr. Jordan's letter dated August 5. Hastie never repaid Mr. Gray for his services.

On March 13, 2015, the Court ruled that Mr. Jordan's letter is admissible at trial. Doc. 129 at 3.

### **Discussion**

Hastie has made Mr. Jordan a necessary trial witness. He initially provided the letter to Hastie as legal cover for her criminal conduct. Now, Hastie wants to rely upon the letter to show she made an honest mistake in paying Mr. Gray's invoice with money from the $1.25 fund. To introduce the letter for that purpose, she must have Mr. Jordan testify. Only Mr. Jordan can testify about what he wrote as the letter's sole author. While four others are carbon copied in the letter, they cannot testify to prove the truth of the matter asserted in the letter. They can only testify that they received the letter. If Mr. Jordan's testifies on Hastie's behalf about his letter, the United States will cross-examine him on issues raised in his testimony. Even if Hastie subsequently abandons her "mistake" defense (i.e., if Hastie decides not to call Mr. Jordan to testify about the letter), Mr. Jordan remains a necessary witness because the United States will call him in its case-in-chief to testify concerning Hastie's use of the $1.25 fund.

As previously noted, Hastie may not introduce evidence of her alleged exculpatory out-of-court statements without subjecting herself to cross-examination. Doc. 55. For example, Mr. Jordan cannot take the stand and say: "I conferred with Hastie, and she indicated she made a simple mistake in withdrawing money from the $1.25 fund." That would be prohibited hearsay. Rule 801(d)(2) of the Federal Rules of Evidence does not extend to a party's attempt to introduce his own statements through the testimony of other witnesses. United States v. Willis, 759 F.2d 1486 (11th Cir. 1985). Thus, the United States may use the letter as evidence of Hastie's criminal conduct, and Hastie is prohibited from using the letter as evidence of a mistake unless

Mr. Jordan's testimony is limited to what he wrote in the letter. Hastie may of course testify about her intent, but she cannot take the stand and say: "I received a letter from Mr. Jordan, who told me I made a simple mistake in paying Mr. Gray's invoice using money from the $1.25 fund." That would be prohibited hearsay. Hastie may not rely on a backdoor advice of counsel defense vis-à-vis Mr. Jordan's letter. She may not use self-serving out-of-court statements made by other witnesses to bolster her credibility, as she previously attempted through Dr. Semoon Chang's expert testimony, which the Court excluded from trial. Doc. 129.

Hastie erroneously concludes in her response:

> The Defendant submits that Buzz Jordan is not a necessary witness, that any relevant and admissible testimony would be uncontested and/or may be stipulated to and/or introduced by other witnesses or documents and that the attorney's name may be redacted from the letter, as other redactions are made in other records.

Doc. 145 at 5.

Hastie's argument has several problems. First, nothing in Hastie's response actually explains how Mr. Jordan is <u>not</u> a necessary witness. She states her desired conclusion but offers zero supporting evidence. The Court has indicated Mr. Jordan will likely be called to testify: "It appears to the Court that there is a real potential Mr. Jordan may be called as a witness by either the Government or Hastie if the letter is to ben [sic] an issue at trial." Doc. 129 at 3 n.2. Second, Mr. Jordan's testimony would clearly concern a contested matter. The United States and Hastie have competing, diverging theories about the letter's significance. As the Court observed: "Whether the letter is evidence of a "mistake" or "criminal conduct," … is a matter for the jury to decide …." Doc. 129 at 3. Third, Hastie's response fails to address <u>any</u> of the concerns raised by the United States, such as the impact of Mr. Jordan's advocate-witness role on co-defendant Ramona Yeager's defenses. Fourth, redactions or other measures would not obviate the problem

4

of Mr. Jordan serving in a prohibited advocate-witness role at trial. Hastie cannot "redact" Mr. Jordan from testifying. To introduce the letter as a defense exhibit, Hastie would almost certainly have to call Mr. Jordan to the stand. The United States, for its part, plans on having Mr. Jordan testify. It is hard to see how redactions, stipulations, jury instructions, or other measures would actually solve the thorny conflict of interest referenced by the Court with respect to Mr. Jordan's lawyer-witness role. Doc. 129 at 3 n.2. Ultimately, while Hastie has a constitutional right of counsel, she does not have a right to proceed with counsel who will "act as advocate at a trial in which the lawyer is likely to be a necessary witness" in violation of Rule 3.7(a) of the Alabama Rules of Professional Conduct.

## Conclusion

For all aforementioned reasons, the United States respectfully requests that the Court disqualify Mr. Jordan from further representation of Hastie.

Respectfully submitted on March 24, 2015.

                                              KENYEN R. BROWN
                                              UNITED STATES ATTORNEY

                                              By: */s/ GREGORY A. BORDENKIRCHER*
                                              Gregory A. Bordenkircher (BORDG3301)
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              63 South Royal Street, Suite 600
                                              Mobile, Alabama 36602
                                              Telephone: (251) 441-5845

                                              By: */s/ SINAN KALAYOGLU*
                                              Sinan Kalayoglu (kalas9469)
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              63 South Royal Street, Suite 600
                                              Mobile, Alabama 36602
                                              Telephone: (251) 441-5845

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 24, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record for the defendants.

               */s/ GREGORY A. BORDENKIRCHER*
               Gregory A. Bordenkircher
               Assistant United States Attorney


               */s/ SINAN KALAYOGLU*
               Sinan Kalayoglu
               Assistant United States Attorney