IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **V.** | * | **CASE NO. 14-00291-CG** |
| | * | |
| **KIMBERLY SMITH HASTIE, et al.** | * | |
| | * | |

**DEFENDANT KIMBERLY HASTIE'S MOTION FOR ACQUITAL
OR IN THE ALTERNATIVE, A NEW TRIAL**

Comes now the defendant, Kimberly Hastie ("Hastie"), by and through undersigned counsel, and respectfully moves this Court to set aside the verdict as to Count 17, the violation of the Drivers Privacy Protection Act ("DPPA"), and enter acquittal pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, order a new trial pursuant to Federal Rule of Criminal Procedure 33.

On June 8, 2015, Hastie was convicted on a jury verdict of violation of 18 U.S.C. § 2721(a), "Prohibition on release and use of certain personal information from State motor vehicle records." [Doc. 254]. However, the evidence at trial was insufficient to sustain Mrs. Hastie's conviction on the violation of the DPPA in Count 17 (herein "the conviction"). The Government failed to present any evidence that any action of Hastie was a violation of 18 U.S.C. § 2721, and failed to prove that § 2721 applied to the facts of this case. First, the Government failed to prove the applicability of the DPPA, as there was no evidence that the Mobile County License Commission is "A State department of motor vehicles." 18 U.S.C. § 2721(a). Additionally, as previously argued in Hastie's Motion to Dismiss [Doc. 126] and Motion for a Judgment of Acquittal [Doc. 247; and orally at trial], an e-mail address is not specified as "personal information" under the DPPA. Therefore no violation occurred and the Court erred in giving a jury instruction which included

email addresses in the DPPA's definition of "personal information." Next, even if the DPPA properly applied to the case, there was no evidence that Hastie knowingly disclosed or otherwise made available personal information and therefore no violation occurred. The deficiencies identified above prove fatal to Hastie's conviction and the interests of justice demand a judgment of acquittal, or alternatively, a new trial.

**I.     The Government Failed to Prove the Applicability of the DPPA to the Facts at Issue.**

To sustain Mrs. Hastie's conviction under the DPPA, the Government had to prove that Hastie was: "A State department of motor vehicles, and any officer, employee, or contractor thereof." 18 U.S.C. § 2721(a). The Government put on no evidence as to what a "State department of motor vehicle" is, or whether Hastie was an officer or employee of a "State department of motor vehicle." The absence of evidence on this element was exemplified by the question of the jury regarding whether the Mobile County License Commission was a "State department of motor vehicles." The burden was on the Government to prove each and every element of the DPPA based charge beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 363-64 (1970). The Government cannot rely on mere speculation or allegations to sustain a conviction when there was no evidence on the issue. The evidence was therefore insufficient to sustain a conviction on this basis alone, and the Court should accordingly set aside the verdict and enter an acquittal. Fed. R. Cr. P. 29.

It cannot be assumed or taken for granted that the Mobile County License Commission is in fact a "State department of motor vehicles." The DPPA fails to define "State department of motor vehicles" in the definition section or elsewhere. *See* 18 U.S.C. § 2725. The Alabama Department of Revenue has a division of "Motor Vehicles" which can register licenses for motor vehicles. *See* Ala. Code § 40-12-240. Additionally, Alabama has a Department of Public Safety.

*See* Ala. Code § 32-2-2 *et seq.* The Department of Public Safety has a driver's license division. Ala. Code § 32-23(3). Furthermore, each locality has its own administrative structure for licenses, tags, and other motor vehicle services, which varies across the state and whose employees may not be employees of the state. While there may be some general connotation for a DMV in the public domain, the burden was on the Government in this case to prove how the Mobile County License Commission, and in particular Kim Hastie, is an officer, contractor, or employee of a "State department of motor vehicles." The Government failed to meet this burden, and therefore the conviction cannot stand.

II.  **The DPPA does not include e-mail addresses. As such, the rule of lenity requires acquittal and the Court erred in instructing the jury that e-mail addresses are "personal information" under the DPPA.**

The DPPA restricts the disclosure of "personal information" contained within motor vehicle records. 18 U.S.C § 2721. An e-mail address is not specified as "personal information" under the definitions section of the DPPA:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C § 2725(3).

The issue of whether email addresses constitute "personal information" for the purpose of criminal prosecution under the DPPA has been raised multiple times in this case. [Docs. 126; 130; 140; 143; 183; 185; 247]. Hastie has both moved for dismissal of the DPPA charge and objected to the jury instruction's inclusion of e-mail addresses in the definition of "personal information." [Doc. 126]. Nonetheless, the Court has stated: "Under the DPPA, e-mail addresses are personal information, and must be afforded the same protection as telephone numbers and mailing

addresses." [Doc. 140, at 7]. While this may be a position that the legislature can adopt in the future if it pleases, it is presently contrary to the law and the interests of justice—particularly in the context of Mrs. Hastie's criminal conviction.

"[C]onstruction of a criminal statute must be guided by the need for fair warning." *United States v. Castleman*, 134 S. Ct. 1405, 1416 (2014) (quoting *Crandon v. United States*, 494 U.S. 152, 160 (1990)). "It is a 'familiar principle' that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Abramski v. United States*, 134 S. Ct. 2259, 2280-81 (2014) (J. Scalia, dissenting)(quoting *Skilling v. United States*, 561 U.S. 358, 410 (2010)). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427 (1985).

> The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*United States v. Santos*, 553 U.S. 507, 514 (2008) (internal citations omitted).

The "knowingly" element of the DPPA, and the statutory intent of Congress as it relates to the word "knowingly" in the DPPA have been analyzed by several other Courts. *See Pichler v. UNITE*, 228 F.R.D. 230, 242 (E.D. Penn. 2005). *See also Roth v. Guzman*, 650 F.3d 603, 610-11 (6th Cir. 2011); *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 603 (7th Cir. 2012); *Maracich v. Spears*, 2009 WL 2929323, No. 7:09-1651-HMH, at *5 (D. S.C. Sept. 8, 2009). These Courts have held that the "knowingly" element under the DPPA does not mean that the defendant has to

know an action is impermissible or in violation of the statute. *Roth*, 650 F.3d at 610-11; *Pichler*, 228 F.R.D. at 242. But, the defendant **does have to know** that the information disclosed is considered "personal information." *See Pichler*, 228 F.R.D. at 242 (analyzing "knowingly" in § 2724 of the DPPA to require proof that the "defendant **knowingly obtained, disclosed, or used personal information** from her motor vehicle records.") (emphasis added). There is no evidence that Hastie knew e-mail addresses were considered personal information under the DPPA. The DPPA defines personal information in § 2725(3). The explicit definition in this section does not state that an e-mail address is "personal information." The Alabama Department of Revenue has a Regulation entitled: "Implementation of the Federal Driver's Privacy Protection Act (DPPA)." Ala. Admin. Code r. 810-5-1-.485. This Regulation does not include e-mail addresses under the description of "personal information" pursuant to the DPPA.

The Court noted the "evolution of electronic media" and also noted that Congress enacted the DPPA in 1994 before the use of e-mail addresses became prevalent. However, the DPPA was amended in 1996, 1999, and 2000. *See* Pub. L. 104-287; Pub. L. 104-294; Pub. L 106-99; and Pub. L. 106-346. If Congress intended the definition of "personal information" to include e-mail addresses, it certainly had the opportunity to so specify in its amendments to the DPPA. Courts should not legislate from the bench. Moreover, whether or not this Court's ex post interpretation of the DPPA may be appropriate in some contexts, it does not give proper notice (i.e. knowledge) to Mrs. Hastie as of the time of her actions which are currently the basis of the Government's charge.

As with any question of statutory interpretation, the first step is to examine the language of the statute itself. *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009) ("We do this because we presume that Congress said what it meant and meant what it said.") (citations and

quotations omitted).  Where a statute identifies a series of two or more terms or things that should be understood to go hand in hand, thus raising the inference that a similar unlisted term was deliberately excluded, the interpretive doctrine of *expressio unius est exclusion alterius*[1] applies. *Camara v. Metro-North R. Co.*, 596 F. Supp. 2d 517, 523 n. 9 (D. Conn. 2009).  *See also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).  The DPPA meaning of "personal information" cannot be read to include a genre of communication identification that is not included in the statutory definition despite amendments to the statute when e-mail communication was prevalent. *See Camara*, 596 F. Supp. 2d at 523 n. 9 (D. Conn. 2009) (using interpretive doctrine of *expression unius* to exclude characteristics that cannot be read into the meaning of "personal information" under the DPPA).

The Government relied heavily on the recent 7th Circuit case *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015), to argue that the word "including" in the DPPA definition of "personal information" is not exclusive.  [Doc. 130, at 1-3].  First, *Dahlstrom* was a civil and not a criminal case.  Additionally, the Court in *Dahlstrom* recognized that its expansion of what constituted "personal information" to include hair and eye color advanced "the [DPPA's] important public safety goals." *Dahlstrom*, 777 F.3d at 944.  The Court emphasized the underlying purpose of the DPPA as a safety statute: "Although a potential stalker would likely require information beyond hair and eye color to positively identify his victim, details regarding any pertinent physical feature would make such identification easier." *Id.*  The Court also limited its

---

[1] One of the Government's quotations from *Dahlstrom* notes that the doctrine of *expressio unius* is a "much-derided maxim". [Doc. 130, at 2].  However, the canon has force when items are members of an "associated group or series" justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). The doctrine remains a valid canon of statutory interpretation, and continues to be used in Alabama and the 11th Circuit. *See Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001); *Fed. Reserve Bank v. Thomas*, 220 F.3d 1235, 1238-39 (11th Cir. 2000); *Fed. Home Loan Mortg. Corp. v. Shaffer,* 2014 WL 7180777, No. 2:14-CV-1690, (N.D. Ala. Dec. 16, 2014); *E.E.O.C. v. Joe Ryan Enterp.,* 281 F.R.D. 660, 663 (M.D. Ala. 2012) ("The rule of interpretation of *expressio unius est exclusion alterius* applies with force in this case.").

holding to the "information at issue here." *Id.* at 942.  Using this civil case to justify a broad interpretation of the DPPA for the criminal prosecution against Mrs. Hastie is improper and a violation of Mrs. Hastie's constitutional protections.

Unlike a concern that a stalker's ability to identify a victim could be enhanced by hair and eye color as described in *Dahlstrom*, there is no physical danger to a person or threat to safety by having a person's e-mail address.  The Government argues that some e-mail addresses help identify a person [Doc. 130]. However, many e-mail addresses do not provide any relevant information about a person. Unlike physical characteristics or other fairly immutable information, e-mail addresses are incredibly customizable by an individual and can be manipulated at-will to exclude any arguably identifying data.   For example, the following hypothetical email: rolltide@madeup.com.[2]   This email address is devoid of identifying information, but would nonetheless be considered "personal information" for criminal prosecution under the Government's position.

The Government cited *Electronic Frontier Foundation v. Office of the Dir. of Nat. Intelligence*, 639 F.3d 876, 888 (9th Cir. 2010) in support of its argument for protecting e-mail addresses. [Doc. 130, at 4].  However, the Court in *Electronic Frontier* described e-mail addresses as a "minor privacy interest" and suggested that e-mail addresses may not identify a person.  *Id.* Again, the primary motivation of Congress in enacting the DPPA was to protect private citizens from stalkers and criminals who could acquire personal information from the DMV to accost or hurt their victims.  *See Camara*, 596 F. Supp. 2d at 524 ("[I]n passing the DPPA, Congress intended to protect the physical safety of an individual. . . .").   The primary purpose of the DPPA was to prevent crime and not protect privacy: "By its nature, the DPPA affords a certain level of

---

[2] Likewise, many of the actual e-mail addresses in question provide no arguably identifying information whatsoever.

privacy protection, but it is a circumscribed one." *Mitchell v. Aitkin County*, 2014 WL 835129, No. 13-2167 at *9 (D. Minn. March 4, 2014) (citing *Margan v. Niles*, 250 F. Supp. 2d 63, 68 n. 4 (N.D. N.Y. 2003) ("the DPPA was a crime fighting measure; not a general privacy protection measure.")). Accordingly, the facts and analysis of *Dahlstrom* are readily distinguishable from this case and do not support expansion of the "personal information" definition to e-mail addresses in this criminal prosecution.

A close reading of the cases cited in *Dahlstrom* further shows the difference between the issues addressed by that decision and this case, particularly related to an interpretation of the word "including" in the definition of personal information. In attempting to discern the meaning of the word "including" in the statutory text, the *Dahlstrom* opinion relies on two Supreme Court cases, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) and *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 189 (1941). The word "including" in the *Campbell* case describes a list of examples for the fair use doctrine under copyright law. *Campbell*, 510 U.S. at 576-577. The list in the *Campbell* case is coupled with the phrase "such as" and links the list of examples with the conjunction "or": "[T]he fair use of a copyrighted work, **including** such use by reproduction in copies or phonorecords or by any other means specified in that section, for purposes **such as** criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, **or** research, is not an infringement of copyright." *Campbell*, 510 U.S. at 576. This language clearly implicates a broader interpretation than the use of the word "including" in the DPPA.

The use of the word "including" as interpreted by the Court in *Phelps* did not involve a list or series at all: "[the Board shall] take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." *Phelps*, 313 U.S.

177 at 188.   Thus, the analysis of the word "including" in *Phelps* as "illustrative" is not applicable to the DPPA at all in as much as the DPPA contains a list of qualities or characteristics introduced by the word "including".  Finally, the DPPA has a section titled "Definitions."  *See* 18 U.S.C. § 2725.  Among the definitions listed is "personal information", which does not include e-mail addresses.  *See* 18 U.S.C. § 2725(3).   The American Heritage Dictionary has five relevant definitions for the word "definition":

> 1. The act of stating a **precise meaning** or significance.
> 2. The statement of the meaning of a word, phrase, or term.
> 3. The act of **making clear and distinct.**
> 4. The state of being **closely outlined** or determined.
> 5. A **determination of outline, extent, or limits**.

The American Heritage Dictionary (2d College ed.) (emphasis added).   The precise meaning of the word "personal information", and the clear and distinct meaning of personal information as contained in the DPPA, expressly does not include e-mail addresses.  *See* 18 U.S.C. § 2725(3).  Adding to the statutory definition, or altering the definition itself, as advocated by the Government, defeats and defiles the purpose of the definition section.   If Congress wants personal information to include e-mail addresses under the DPPA, it is for Congress to amend the statute.

The Government's position that the definition of "personal information" under the DPPA is illustrative and not exhaustive has fair-reaching and absurd consequences.  **Anything and everything** could be interpreted to fall under the Government's broad reading for information that identifies an individual.  The list of information that may be maintained by a "State department of motor vehicles" which could identify an individual under the Government's interpretation is staggering.  Surely Congress did not intend for the term "personal information" under the DPPA to be used in this manner when it created a definition for "personal information."

Undersigned counsel is not aware of a single case across the country where e-mail addresses have been found to constitute personal information under the DPPA. This despite the Act's existence since 1994 and the evolution of electronic media and e-mail over the past twenty years. In order for a criminal violation of the DPPA to have occurred, Hastie had to know that e-mail addresses were "personal information" under the DPPA when a plain reading of that statute did not so specify. Hastie could not have known such, and the Government failed to present any evidence to the contrary. The rule of lenity requires that the DPPA be read in Mrs. Hastie's favor in order to avoid criminalizing conduct without just notice and specificity, and thus the DPPA based charge against Mrs. Hastie should not have been submitted to the jury. Additionally the Court should not have given the jury an instruction which imposed on Mrs. Hastie the unproven knowledge that e-mail addresses were "personal information" under the DPPA as a matter of law. The jury should have been allowed to determine the issue as a factual question. When the jury is provided erroneous or legally defective instructions, then the court must grant a new trial. *See United States v. Borrero*, 771 F.3d 973, 977 (7th Cir. 2014). Because the jury in this case was given inadequate and/or erroneous guidance on a central point of this case, the conviction must be set aside.

### III. Conclusion.

The Government failed to present sufficient evidence to sustain the conviction. No evidence was presented that the Mobile County License Commission is a "State department of motor vehicles" as required for conviction under the DPPA, and there was no evidence that Mrs. Hastie *knowingly* disclosed or otherwise made available "personal information." Furthermore the DPPA, because of its express terms, is so uncertain, ambiguous, and vague if the "personal information" which it purports to protect includes e-mail addresses that it cannot survive the rule

of lenity. The DPPA must be read in Mrs. Hastie's favor to exclude e-mail addresses from the relevant definition. Alternatively, even if the case properly went to the jury, which Mrs. Hastie strongly disputes, the Court erred in instructing the jury that "personal information" under the DPPA includes e-mail addresses and Mrs. Hastie is therefore due to be granted a new trial.

    Respectfully Submitted,

/s/ Neil L. Hanley
NEIL L. HANLEY
Attorney at Law
158 Congress Street
Mobile, AL 36603
Tel: (251) 432-5579
Fax: (251) 432-5507
Email: NHlawoffice@gmail.com

/s/ N. Stewart Hanley
N. STEWART HANLEY
Attorney at Law
158 Congress Street
Mobile, AL 36603
Tel: (251) 432-5579
Fax: (251) 432-5507
Email: hanleylawfirm@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this the 19th day of June, 2015 upon all counsel of record by electronically filing the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Neil L. Hanley