IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 14-00291-CG |
| | ) | |
| KIMBERLY SMITH HASTIE | ) | |

**RESPONSE TO DEFENDANT HASTIE'S ACQUITTAL / NEW TRIAL MOTION**

Comes now the United States of America, by and through the United States Attorney for the Southern District of Alabama, and responds to defendant Kimberly Smith Hastie's acquittal / new trial motion. Doc. 262. For reasons stated below, the motion should be denied.

**Discussion**

A.   **Standard of review for Rule 29 motion for acquittal**

In a motion for a judgment of acquittal per Rule 29 of the Federal Rules of Criminal Procedure, the standard of review is "whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987) (citations omitted).

B.   **Standard of review for Rule 33 motion for new trial**

Under Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). New trial motions are seldom granted:

1

> While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'

Id. at 1312-13 (citations omitted); see also United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) ("A motion for new trial must be viewed with 'great caution.'") (citation omitted).

    **C.**    **The jury could reasonably find that Hastie is an officer of a State department of motor vehicles (DMV)**

The jury could reasonably find that Hastie is an officer of a State DMV. First, the Mobile County License Commission (the "License Commission") is unquestionably a DMV. The jury was presented with evidence about the License Commission's responsibilities (e.g., motor vehicle tags and titles, driver licenses, business licenses, sales and use tax, manufactured homes), which fall within a DMV's traditional domain. The admitted evidence includes License Commission brochures and newsletters, which outline DMV-related tasks, as well as the "Policies, Regulations, and Eligibility Requirements" portion of the License Commission's website concerning online tag renewals. This section contains a notice provision of the Driver's Privacy Protection Act (DPPA). The provision states in pertinent part: "The Federal Driver's Privacy Protection Act of 1994 went into effect September 1997. This law was enacted to protect the interest of individuals in their personal privacy by prohibiting the disclosure and use of personal information contained in their motor vehicle registration and title records, except as authorized by such individuals or by law." The fact that the License Commission has a DPPA notice provision on its website is clear evidence that the agency is a DMV.

    Second, Hastie is an elected public official of the State of Alabama who serves as License Commissioner for the License Commission. Numerous government witnesses (e.g., License Commission information technology employee Bradley Bray, Mobile County Revenue

Commissioner Marilyn Wood, Mobile County Finance Director Michelle Herman, former Hastie assistant Krista Foley) and defense witnesses (e.g., political consultant Jonathan Gray) testified in various ways about Hastie's elected office and her position as License Commissioner.  The jury learned that Hastie is bound by state ethics law, has received mandatory state ethics training (like all public officials in the State of Alabama), and must file annual state financial disclosures with the Alabama Ethics Commission.  Hastie herself shared with the jury video clips in which she discusses her duties as License Commissioner and various DMV-related tasks (e.g., vehicle registrations, taxes, etc.).

Third, the jury could reasonably determine that the License Commission is a "State DMV" per the DPPA.  In the United States, it is commonly known that a DMV is a state-level government agency that administers vehicle registration and driver licensing.  The phrase "DMV" is not used in every state (indeed, the DPPA does not define "DMV"), and DMV functions are not handled by a single agency in every state (in Alabama, the Motor Vehicle Division is a division of the Department of Revenue, and the Driver License Division is a division of the Alabama Department of Public Safety).  Furthermore, as Wood, Herman and others alluded at trial, counties in Alabama, like other states, are political subdivisions of the state and are organized to assist in the local administration of state functions.   In this vein, motor vehicles in Alabama are registered through the offices of license plate issuing offices (e.g., the License Commission) in the county (e.g., Mobile County) in which the owner resides.  Various License Commission documents entered into evidence (e.g., brochures, newsletters) contain the Alabama state flag on their letterhead.  The License Commission's responsibilities are established under the Alabama Constitution and laws of the State of Alabama.  Wood, Herman, and others testified about various state laws (e.g., Alabama's Mandatory Liability Insurance Law, Alabama Legislative Act #2010-268 concerning credit cards) governing the License Commission.  Similarly, the jury

heard testimony that the License Commission, like the Mobile County Revenue Commission, collects and assesses taxes on behalf of the State of Alabama and that both departments are required by Alabama law to distribute funds to state agencies.  The fact that Hastie is an elected public official of the State of Alabama governed by Alabama law is evidence that the organization she runs is a "State DMV" for purposes of the DPPA.  Additionally, the fact that the License Commission has a DPPA notice provision on its website is evidence that the entity is a State DMV. To be sure, the jury heard zero evidence that the License Commission issues <u>county</u> tags, the reason being that the License Commission, like other DMVs across the country, issues <u>state</u> tags. This fact is commonly known, and the jury need not surrender its common sense when weighing the merits of Count 17.   Similarly, DMV customers need a valid <u>state</u>-issued driver license, not a "county"-issued driver license (which do not exist in Alabama or other states), for a plethora of DMV-related transactions.   Again, this fact is well-known, and documents admitted into evidence (e.g., License Commission brochures) buttress this point.  Ultimately, given the weight of evidence before the jury regarding the License Commission's DMV functions as well as common sense, a jury could reasonably find that the License Commission operates as a "State DMV."

### D.    The Court did not err in instructing the jury that email addresses are personal information

Most of Hastie's acquittal / new trial motion is devoted to re-litigating a settled issue.  The question of whether email addresses are personal information was previously briefed by the parties and answered by the Court, which held unequivocally that "personal email addresses are protected under the DPPA."  Doc. 140 at 8.  The Court's order governs Hastie's acquittal / new trial motion, and while Hastie disagrees with the Court she offers nothing in her latest motion that would require the Court to reconsider its order.

Hastie's acquittal / new trial motion is fundamentally a reconsideration motion, similar to her request for the Court to reconsider its ruling concerning the exclusion of Dr. Semoon Chang's

testimony.  Doc. 138.  Reconsideration motions are rarely granted.  See, e.g., Doc. 155 (reconsideration motion concerning Dr. Chang's testimony denied); United States v. Crabtree, 2015 WL 631364, at *1 (S.D. Ala. Feb. 13, 2015) (reconsideration motion concerning suppression motion denied).  As district courts in the Eleventh Circuit have observed:

> [R]econsideration motions in the criminal context are well-taken when they present one or more of the following:  (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice.  Moreover, as with motions for reconsideration in civil matters, motions to reconsider in criminal cases should not "simply rehash previously litigated issues" and "must be used sparingly."

United States v. Sabooni, 2014 WL 4385446, at *1 (S.D. Fla. Sept. 4, 2014) (citations omitted).

None of the above three factors apply in Hastie's case.  She has not shown otherwise.  The Court's order rests upon sound legal reasoning.  The Court rightly observes that Congress enacted the DPPA "to protect personal information and customer privacy," the matters precisely at issue in Count 17.[1]  Doc. 140 at 3, n. 2.  The Court's interpretation of the meaning of "including" is sensible and in accordance with Supreme Court precedent and other existing law.  Id. at 5-6.  Hastie's position that email addresses are not personal information "ignores both common sense and the evolution of electronic media and communication over the past twenty years."  Id. at 6.  Several victims of Hastie's crime (e.g., Cissy Hartley, Joe Busta) testified at trial that they thought the nonconsensual use of their email addresses violated their privacy rights.  Likewise, the Court properly dispensed with Hastie's contention that "customers voluntarily disclosed their email addresses to the License Commission," stating that Hastie's assertion "ignores the reality of doing business in an electronic age.  To conduct online business with the License Commission, an

---

[1] Hastie misguidedly challenges the United States' reliance on Dahlstrom v. Sun-Times Media, LLC, 777 F.3d 937 (7th Cir. 2015).  Dahlstrom is valid appellate law, notwithstanding its non-criminal context, and its analysis is directly applicable to Count 17.  As Dahlstrom observes, the DPPA seeks "to protect the personal privacy and safety of all American licensed drivers" as well as "to protect against the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation."  Id. at 944-45 (citations and internal quotations omitted).

e-mail address is required." Id. at 7. At trial, the jury learned that License Commission customers are typically required to provide an email address to transact online and that Hastie routinely asked her employees to collect customers' email addresses in the ordinary course of business.

In short, the Court's ruling that email addresses are personal information is dispositive. Its order is grounded in sound legal analysis. None of the Sabooni factors apply in Hastie's case.

### E. The trial record is replete with evidence that Hastie knowingly disclosed and otherwise made available personal information to a person or entity in violation of the DPPA

The United States offered ample evidence through several fact witnesses (e.g., Bradley Bray, Candace Cooksey, James Arendall) that Hastie disclosed the email addresses in question to the Sandy Stimpson campaign team with the prior consent of the email address accountholders. Tellingly, Hastie did not cross-examine these witnesses on the issue of whether Hastie directed the disclosure.

The narrative is straightforward. Bray testified that Hastie instructed him to download the email addresses. According to Bray, around August 22, 2013 Hastie, Ramona Yeager, and others entered Bray's office at the License Commission. Hastie told Bray she wanted him to email a letter to everyone within the city limits of Mobile. Hastie advised Bray that the letter would be an endorsement of Sandy Stimpson for mayor of Mobile. Bray told Hastie that she could not send such an email because it would come from a @mobilecountylc.com address and everyone in Mobile would know that the email came from the License Commission. Hastie then asked Bray for the email addresses on a thumb drive. Fearing retribution by Hastie, Bray obtained a thumb drive from a License Commission employee and ran a query from the License Commission server for all email addresses in the city limits of Mobile, per Hastie's instructions. Bray downloaded the query's results to the thumb drive. Hastie instructed Bray to give the thumb drive to Dawn

Evans, which he did. The thumb drive was subsequently provided to the Sandy Stimpson campaign team. Cooksey testified that she received the email addresses and gave them to Arendall for him to send a mass email to the residents of Mobile County. On August 26, 2013, a day before Mobile's mayoral election, Arendall sent a mass email to the email addresses taken from the thumb drive. The email outlined Hastie's endorsement of Sandy Stimpson and encouraged voters to vote for the candidate. The email was sent "On Behalf of Kim Hastie," was labeled "A Message from Kim Hastie," and contained a picture of Hastie supporting Stimpson. Cooksey testified that she corresponded with Hastie on several occasions concerning the content of the mass email before it went out. The United States introduced evidence (e.g., emails) outlining Hastie's involvement in the endorsement letter. The evidentiary record shows a 99.999% match between the email address list Arendall used to send the Hastie endorsement mass email and the Bray email address list. In sum, the evidence is indisputable that Hastie knowingly directed the disclosure of the email addresses in question.

The United States also offered evidence that Hastie knew she was violating the law when she made the disclosure. First, Bray cautioned Hastie about making the disclosure. Second, the United States showed the jury the DPPA notice provision on the License Commission's website (the License Commission's personnel handbook also contains a DPPA notice provision). Again, as the United States outlined both at trial and in an earlier pleading (and as the Court correctly observed in its order), License Commission customers must provide their email addresses for certain online transactions (the DPPA notice provision is visible during this transactional process). Third, a jury could reasonably infer from Hastie's position as License Commissioner that she would be knowledgeable about the rules and regulations governing the License Commission (e.g., the DPPA), an office which she oversees. Fourth, the jury saw a WKRG News 5 video clip showing Hastie lying to the public just days after she leaked the email addresses. In the clip, she

says: "They [the Stimpson campaign] sent it [the mass email] out to I guess in some kind of email bank that they had, and then I had a, a backlash of people asking me where I got them. The only reason that we ask for anyone's email here [at the License Commission] is because eventually because cost is so high on, on mailing, that eventually we would like to send our renewals through emails. So we have not given anybody's email information to anyone." Hastie made a public statement denying the disclosure because of the large public backlash against her email endorsement. That backlash tends to show that Hastie knew she had done something wrong – hence the lie. Fifth, one victim– Phillip Lambert – testified that after he received the mass email he called the License Commission, spoke with Hastie, and told her that what she did was wrong (Hastie lied to him in response). Sixth, as previously indicated, several witnesses (e.g., Krista Foley, Bradley Bray) testified that Hastie demanded that License Commission employees regularly collect email addresses from customers in the ordinary course of business. The fact that the License Commission, like other state DMVs across the country, regularly gathers and uses customers' email addresses and other personal information in the ordinary course of business raises the inference that Hastie would know that customers' email addresses are important pieces of personal information that are not to be disclosed without lawful authority. Again, the reason the DPPA was enacted was to protect the interest of individuals in their personal privacy. Ultimately, the United States proved beyond a reasonable doubt that Hastie knowingly disclosed the email addresses in question for a prohibited purpose and without the prior consent of the email address accountholders.

## Conclusion

For all reasons stated above, the United States respectfully asks the Court to deny Hastie's motion. Hastie has not satisfied her heavy burden under Rule 29 or Rule 33 to sustain her motion. The jury's verdict for Count 17 is fair and should remain unaltered.

Respectfully submitted on July 6, 2015.

>KENYEN R. BROWN
>UNITED STATES ATTORNEY
>
>By: */s/ GREGORY A. BORDENKIRCHER*
>Gregory A. Bordenkircher (BORDG3301)
>Assistant United States Attorney
>United States Attorney's Office
>63 South Royal Street, Suite 600
>Mobile, Alabama 36602
>Telephone: (251) 441-5845
>
>By: */s/ SINAN KALAYOGLU*
>Sinan Kalayoglu (kalas9469)
>Assistant United States Attorney
>United States Attorney's Office
>63 South Royal Street, Suite 600
>Mobile, Alabama 36602
>Telephone: (251) 441-5845

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record for the defendants.

>*/s/ GREGORY A. BORDENKIRCHER*
>Gregory A. Bordenkircher
>Assistant United States Attorney
>
>*/s/ SINAN KALAYOGLU*
>Sinan Kalayoglu
>Assistant United States Attorney