[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-14481

————————————————

D.C. Docket No. 1:14-cr-00291-KD-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KIMBERLY SMITH HASTIE,

Defendant - Appellant.


————————————

Appeal from the United States District Court
for the Southern District of Alabama

————————————

(April 25, 2017)


Before WILLIAM PRYOR, JORDAN, and RIPPLE,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

————————————————

* Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

This appeal requires us to decide two issues: first, whether the term "personal information" in the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721(a), 2725(3), includes email addresses; and second, whether the government presented sufficient evidence for the jury to find that the License Commissioner of Mobile County, Alabama, was an "officer, employee, or contractor" of a "State department of motor vehicles," *id.* § 2721(a). During her tenure as License Commissioner of Mobile County, Kimberly Hastie obtained the email addresses of residents of Mobile County from a Commission database. Hastie provided these email addresses to the campaign team for her preferred candidate for mayor of Mobile so that the campaign could send a mass email containing Hastie's endorsement of the candidate. A jury found Hastie guilty of violating the Driver's Privacy Protection Act. Because the statutory definition of "personal information" includes email addresses and because sufficient evidence supported the verdict, we affirm.

## I. BACKGROUND

Kimberly Hastie served as the License Commissioner of Mobile County. The License Commission issues driver's licenses and automobile titles and maintains motor vehicle registrations for residents of Mobile County. The License Commission is "a collection and disbursal agency" for taxes and fees related to motor vehicles. The License Commission maintains a website, which requires

users to provide their email addresses for all online transactions. The License

Commission also instructs tellers at its offices to obtain email addresses from

licensed drivers and motor vehicle owners. Both the website and the policy manual

of the License Commission include a statement about the Driver's Privacy

Protection Act.

Hastie asked Brad Bray, the manager of information technology, to send

emails to addresses in the License Commission's database communicating Hastie's

endorsement of Sandy Stimpson for mayor. Bray refused because "everybody

would know that we just used our E-mail database to send out this list." Instead, he

downloaded a list of email addresses onto a flash drive and delivered it to Hastie's

secretary. Hastie gave the list of email addresses to the Stimpson campaign, and

the Stimpson campaign sent out Hastie's endorsement to those email addresses.

When later questioned by the press, Hastie falsely denied that she had released a

list of email addresses.

In 2015, a federal grand jury returned a superseding indictment against

Hastie on 18 counts. Count 17 charged Hastie with violating the Driver's Privacy

Protection Act by disclosing the email addresses collected by the License

Commission to a political consulting firm to tout Hastie's support for a mayoral

candidate. At trial, the district court instructed the jury as follows that the

government had to prove beyond a reasonable doubt the following elements for

Count 17, including that Hastie worked for a state department of motor vehicles:

> The defendant is an officer, employee, or contractor of *a state department of motor vehicles*; the defendant knowingly disclosed or otherwise made available to any person or entity personal information about an individual; the personal information was obtained by the Department of Motor Vehicles in connection with a motor vehicle record; and the personal information was disclosed for any reason other than a reason where the release of such information is specifically permitted.

Trial Tr. Day 7, 1596:15–23, June 3, 2015 (emphasis added). The district court

also defined "personal information" as follows to include email addresses:

> The term "personal information" means information that identifies an individual, *including an individual's E-mail address*, photographs, Social Security number, driver's license, name, address, telephone number, medical or disability information. Personal information does not include information on vehicular accidents, driving violations, and a driver's status.

*Id.* at 1596:24–1597:5 (emphasis added).

Before the jury returned its verdict, Hastie filed an amended motion for

judgment of acquittal. She argued that the statutory definition of "personal

information" did not include email addresses and that "the Government has failed

to present sufficient evidence from which the jury could find beyond a reasonable

doubt that she is an 'officer, employee, or contractor of a *State* department of

motor vehicles.'" The district court denied the motion.

The jury found Hastie guilty of violating the Driver's Privacy Protection Act and not guilty on all other counts. Hastie filed a renewed motion for judgment of acquittal or, in the alternative, a new trial. The district court denied the motion and sentenced Hastie to pay a fine of $5,000.

## II. STANDARDS OF REVIEW

"We review *de novo* whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). "Statutory interpretation is a question of law over which we exercise *de novo* review." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995). We also "review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party," *United States v. Myers*, 972 F.2d 1566, 1572 (11th Cir. 1992), but we give the district court "wide discretion as to the style and wording employed in the instructions," *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1276 (11th Cir. 2008).

## III. DISCUSSION

The Driver's Privacy Protection Act prohibits the disclosure of personal information obtained by a state department of motor vehicles except for certain permissible uses, none of which are relevant to this appeal:

> (a) A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
> (1) personal information, as defined in 18 U.S.C. § 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; . . .

18 U.S.C. § 2721(a). The Act defines personal information as "information that identifies an individual." *Id.* § 2725(3).

We divide our discussion in two parts. First, we explain that sufficient evidence supported the jury's factual determination that Hastie was an officer or employee of a State department of motor vehicles. Second, we explain that the definition of "personal information" in section 2725(3) includes email addresses and that the district court did not err in so instructing the jury.

### A. The Jury Could Find that the License Commission Is a "State Department of Motor Vehicles."

The government presented sufficient evidence to support the jury's verdict that Hastie was an "officer, employee, or contractor" of "[a] State department of motor vehicles" under the Act. 18 U.S.C. § 2721(a). As the district court acknowledged, Hastie's status as an officer or employee of a state department of

motor vehicles was "an element of the offense" that needed to be proved to the jury as a "question of fact." The parties do not contest that Hastie served as the License Commissioner for the Mobile County License Commission. But Hastie argues that the government failed to present enough evidence that the Mobile County License Commission "is in fact a 'State department of motor vehicles'" to sustain a conviction. We disagree.

Specific testimony addressed the relationship between the Mobile County License Commission and the State of Alabama. For example, the jury heard evidence that some of the responsibilities of the License Commission as "a collection and disbursal agency" were defined by statute. The jury also heard testimony that the State oversaw aspects of the License Commission; for example, the state revenue commissioner sometimes played a management role, and the License Commission was subject to state ethics training. And the jury could have found that the Commission determined that it was subject to the Act because it included a statement about the Act on its website and in its policy manual.

The jury could have found that the Mobile County License Commission acts for the State when it performs the traditional tasks associated with a state department of motor vehicles. "[T]he law permits jurors to 'apply their common knowledge, observations and experiences in the affairs of life.'" *United States v. Gainey*, 111 F.3d 834, 836 (11th Cir. 1997) (quoting *United States v. Cruz-Valdez*,

773 F.2d 1541, 1546 (11th Cir. 1985) (en banc)). The License Commission issues

driver's licenses and automobile titles and handles motor vehicle registrations for

residents of Mobile County, responsibilities commonly known to be within the

domain of state departments of motor vehicles. Driver's licenses and license plates

allow drivers to operate their motor vehicles in the *State* of Alabama and allow

individuals to comply with *state* laws. And the Mobile County License

Commission remits fees to the State and implements state laws about vehicle

registration. *See, e.g.*, Ala. Code § 32-6-61 (1975) ("All persons who acquire a

motor vehicle which is located in this state and required to be registered in this

state . . . shall reregister the vehicle with the . . . county official authorized and

required by law to issue license plates."); § 32-9-3 ("Any . . . state or county

license inspectors and their deputies . . . shall be authorized . . . to enforce the

provisions of this chapter."); *cf. Ex parte Tuscaloosa Cty.*, 796 So. 2d 1100, 1106

(Ala. 2000) (explaining that under Alabama law, a county official "was acting as

an agent of the state for purposes of enforcing the state's business-license laws").

Hastie collected the personal information of drivers as a prerequisite to these

transactions traditionally associated with a department of motor vehicles.

That Alabama does not house all the functions of a traditional department of

motor vehicles in one entity does not change this conclusion. Hastie argues that

because the government concedes that there is no literal "State department of

motor vehicles," in Alabama (but instead an Alabama Department of Revenue, Motor Vehicle Division), the Act does not apply to her. But the Act does not allow defendants to escape liability because their public employer that issues drivers' licenses and registers motor vehicles is called something other than the "department of motor vehicles." Because the Mobile County License Commission participates in the state system for vehicle registration and drivers licenses, it does not matter how Alabama labels or organizes that system. "[V]iewing the evidence in the light most favorable to the government" and "drawing all reasonable factual inferences in favor of the jury's verdict," *Jiminez*, 564 F.3d at 1284, the evidence was sufficient for a reasonable jury to have found that Hastie was an employee or officer of a state department of motor vehicles.

### B. An Individual's Email Address is "Personal Information."

We begin "where courts should always begin the process of legislative interpretation . . . which is with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). The Driver's Privacy Protection Act defines the term "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18

U.S.C. § 2725(3). "Definition sections" in statutes "are to be carefully followed."
Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
Texts* 225 (2012); *see also Fox v. Standard Oil Co.*, 294 U.S. 87, 96 (1935).

Email addresses fall within the ordinary meaning of "information that
identifies an individual." They can "prove" or "establish the identity of" an
individual. *Identify*, *Webster's New International Dictionary* 1236 (2d ed. 1961).
Email addresses often expressly include the account holder's name, affiliated
organization, or other identifying information. With a simple search engine or a
service like Spokeo, an email address can also be used to find personal information
such as a corresponding username or physical address. The statute does not
exclude "monikers created solely for purposes of electronic communication," so
long as the moniker identifies an individual.

This interpretation is strengthened by the material similarity between email
addresses and the examples in the statute. Because "[a]ssociated words bear on one
another's meaning," Scalia & Garner, *supra*, at 195, the examples give meaning to
the term "personal information." Email addresses are much like an online version
of a physical address or a telephone number: they serve both as a way to find an
individual in an online space and as a way to contact a person. Hastie argues that
our interpretation is flawed because we "assume[] a person has an e-mail address,"
but this argument is backwards. We ask whether an email address identifies an

individual, not whether an individual has an email address. And the examples listed in the statute reveal that "information that identifies an individual" does not require that a single piece of information on its own be sufficient to locate a particular individual. An individual might have multiple phone numbers or one, and an address might be associated with one person or many—the ratio does not need to be 1:1. The term "personal information" should be read naturally to include facts that can identify an individual, as opposed to facts that in every instance must identify an individual.

A recent Seventh Circuit opinion supports our interpretation of "personal information." In a civil action under the Act, the Seventh Circuit held that the definition of "personal information" in the Act included birth date, height, weight, hair color, and eye color. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 942 (7th Cir. 2015). The court acknowledged that the information "does not *uniquely* single out a particular person as does, for example, a Social Security number," but stated that the information still "indisputably aids in 'identif[ying]' them." *Id.* at 943. Like a telephone numbers or a physical address, an email address is "information that identifies an individual."

The list of examples is not exclusive because it is preceded by the word "including." Hastie argues that the canon of *expressio unius* applies to the list of examples in the definition and that we cannot add anything to the statutory

definition that Congress has not authorized. But "the word *include* does not ordinarily introduce an exhaustive list." Scalia & Garner, *supra*, at 132, 226. The Supreme Court has repeatedly held that the word "including" in a statute signifies enlargement, not limitation. *See, e.g.*, *Chicksaw Nation v. United States*, 534 U.S. 85, 89 (2001) (explaining that "including" "emphasizes the fact that that which is within is meant simply to be illustrative"); *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (explaining that terms like "'including' . . . indicate the 'illustrative and not limitative' function of the examples"). Because "including" signals a list of examples and not an exclusive definition, interpreting the statute to include email addresses does not "add" anything but instead gives meaning to the definition of "information that identifies an individual."

If we limited the definition to only the enumerated examples, we would render the express exclusions superfluous. A statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see also* Scalia & Garner, *supra*, at 174. The definition says that it "does not include information on vehicular accidents, driving violations, and driver's status" and also excludes the 5-digit zip code. 18 U.S.C. § 2725(3). But if the list were limited to the included examples, there would be no need to exclude

anything else. The presence of specific exclusions means this statute is not an exception to the general rule that "includes" is not exhaustive.

The word "including" also defeats Hastie's argument that because Congress specifically included email addresses as an example of "personal information" in the Children's Online Privacy Protection Act, 15 U.S.C. § 6501(8), Congress intended to exclude it from the Driver's Privacy Protection Act. Although such an absence is persuasive in comparable exclusive definitions, *see, e.g. Price v. Time, Inc.*, 416 F.3d 1327, 1341 (11th Cir. 2005) (comparing the legislature's use of the word "magazine" as opposed to "newspaper" in other contemporary statutes), the absence loses meaning when comparing non-exclusive lists. Especially because the Children's Online Privacy Protection Act is about online activities, the use of email addresses there does not speak to the absence of email addresses in the Driver's Privacy Protection Act.

Nor does the rule of lenity require Hastie's acquittal. "Ambiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor," but "[n]aturally, the rule of lenity has no application when the statute is clear." Scalia & Garner, *supra*, at 296, 301. "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United*

*States*, 364 U.S. 587, 596 (1961). Because the Driver's Privacy Protection Act is not ambiguous, there is no tie to break in favor of Hastie.

Although Hastie argues that the rule of lenity should apply because she did not know email addresses were covered by the Act, "ignorance of the law is typically no defense to criminal prosecution," *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015). The Act says that a defendant must knowingly disclose (as opposed to negligently misplace) the information, but the Act does not require knowledge that such disclosure is illegal. *Cf. id.* And in any event, the government offered evidence that Hastie was aware of the prohibition because she attempted to hide the source of the emails and later lied about her behavior. Our construction of the statute is broader than Hastie's interpretation, but "[t]he mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable," *Smith v. United States*, 508 U.S. 223, 239 (1993).

The statute is also not "void for vagueness." The definition of "personal information" is not so vague that it fails to provide fair notice nor does it require state officials to "guess at its contours." *Cf. Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048 (1991). The Seventh Circuit agrees. It held that its interpretation of "personal information" did not "strain the [Act's] plain meaning" and as a result, was "clear and precise enough to give a person of ordinary intelligence fair notice about what is required of him." *Dahlstrom*, 777 F.3d at 946 (quoting *Wis.*

*Right to Life, Inc. v. Barland*, 751 F.3d 804, 835 (7th Cir. 2014)). Hastie was fairly convicted of violating the Act.

Finally, because the district court accurately stated the law, it did not err in instructing the jury that "[t]he term 'personal information' means information that identifies an individual, including an individual's email address." Although perhaps not "*all* email addresses are 'personal information,'" see Dissenting Op. at 27–28, the district court accurately stated the law when it said that personal information includes an *individual's* email address, in the same way that it includes an individual's telephone number or physical address. Hastie argues that "[m]inimally," the jury should have been allowed to determine whether "personal information" includes email addresses "as a factual question." But the definition of "personal information" is a matter of statutory interpretation, which makes it a question of law. *See United States v. Wilson*, 788 F.3d 1298, 1310 (11th Cir. 2015). That Hastie disagrees with our definition of "personal information" does not remove the authority of the district court to instruct the jury on the law.

The dissent correctly states that a district court cannot direct a verdict on an element of the offense, Dissenting Op. at 21, but the dissent misapprehends the distinction between an instruction that defines an element and one that directs a verdict on that element. In *United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984), we explained that the district court "correctly ruled that, as a matter of law, alleged

tax returns which do not contain any financial information are not 'returns' within the meaning of [the statute]." *Id.* at 707. A definition that stopped there would have been a permissible statement of the law to the jury. *United States v. Grote*, 632 F.2d 387, 391 (5th Cir. 1980) (holding that a jury instruction providing the same definition of tax returns did not direct the verdict, but "merely instructed the jury, in light of the evidence that had been introduced at trial, how it might find the existence of the second element of the offense charged"). But the district court in *Goetz* "went on to determine that *the documents filed by the defendants* did not contain any financial information, and concluded that, as a matter of law, *these documents* were not returns." 746 F.2d at 708 (emphases added). The district court "essen[tially] . . . directed a verdict" on that element by conclusively applying the definition to the facts, *id.*, instead of leaving the jury the "responsibility to find the . . . element of the offense . . . under the charge as given." *Grote*, 632 F.2d at 391. We identified the same error in *Roe v. United States*, 287 F.2d 435 (5th Cir. 1961). The district court "should have told the jury that to convict it must first find that, *within the definition of an investment contract given by the Court*, these transactions were an investment contract." *Id.* at 441 (emphasis added). The instruction that "assignments of oil and gas leases coupled with collateral agreements . . . are investment contracts" was permissible, but the instruction that "the investment *contracts described in the first count of this indictment* come

within the definition" was not. *Id.* at 440 n.8 (emphasis added). The Fifth Circuit has since explained that "[i]t is the judge's duty to instruct the jury concerning th[e] definition [of a security]" and "[o]f course, the question whether a generic type of document, such as a traveler's check or an equipment lease, may come within the reach of the statute's prohibition is one of law," but "[w]hether a particular piece of paper meets that definition . . . is for the jury to decide." *United States v. Johnson*, 718 F.2d 1317, 1321 n.13 (5th Cir. 1983) (en banc). Our dissenting colleague rejects our reading of these decisions, but fails to explain how they do not make the very distinctions explained above.

The district court would have erred if it had instructed the jury that the emails *provided by Ms. Hastie* constitute "personal information," but the district court did not do so. The district court instead provided the jury a definition at a higher level of generality when it explained that "'personal information' means information that identifies an individual, including an individual's E-mail address." Trial Tr. Day 7, 1596:24–1597:5, June 3, 2015. The dissent asserts that these two instructions are "qualitatively the same," Dissenting Op. at 27, but our precedents maintain that they are materially and legally different, *see Grote*, 632 F.2d at 391. Because a district court may instruct a jury that a generic kind of document is not a return, *see Goetz*, 746 F.2d at 707–08, and that a generic kind of transaction is an investment contract, *see Roe*, 287 F.2d at 441, the district court did not err in

instructing the jury that a generic identifier (a personal email address) is personal information. The district court did not "appl[y] the facts to the law, leaving nothing for the jury to determine," *Goetz*, 746 F.2d at 709, because the jury was still responsible for deciding whether Hastie shared information that met that legal definition. It is irrelevant that this particular decision was simple; the jury applies the law to the facts "no matter how overwhelming the evidence." *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993).

Contrary to the dissent's assertion, Dissenting Op. at 28, our ruling also does not conflict with the decision to allow the jury to decide whether Hastie was an "officer" or "employee" of a "State department of motor vehicles," 18 U.S.C. § 2721(a). In its discretion, the district court perhaps could have defined that statutory language to include county officials who act on behalf of the state, but the district court could not have determined that Hastie was such an officer without running afoul of the Sixth Amendment. Although there may arise situations where a purported "definition" is incorrect or so specific that it essentially directs the verdict, that problem is not present here. Because the generic definition of "personal information" given by the district court accurately stated the law, the district court did not err in its instructions to the jury.

## IV. CONCLUSION

We **AFFIRM** Hastie's judgment of conviction.

JORDAN, Circuit Judge, concurring in part and dissenting in part.

My only disagreement with the majority opinion concerns the Sixth Amendment claim. But that disagreement is a significant one.

The government accused Kimberly Smith Hastie of disclosing the "personal information" of Mobile County residents in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721(a)(1), by providing their email addresses to the political campaign of a candidate she wanted to endorse. Because email addresses are not included in the DPPA's definition of "personal information," *see* 18 U.S.C. § 2725(3) (defining "personal information" as "information that identifies an individual," and providing various examples), Ms. Hastie asked the district court to give the jury the statutory definition of "personal information" and allow it to decide whether email addresses constitute "information that identifies an individual." *See* D.E. 294 at 136–37. The district court refused, and instead told the jury that, as a matter of law, the term "personal information" includes email addresses. *See* D.E. 295 at 129–30.

That, in my view, was reversible constitutional error. It is undisputed that the disclosure of "personal information" is an element of a DPPA offense, and the Sixth Amendment and the Due Process Clause require that "each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2156 (2013). As a result, the jury should have been allowed to

decide whether the email addresses provided by Ms. Hastie constitute "personal information."

## I

The majority holds that the district court did not err in instructing the jury that the term "personal information" includes email addresses because the definition of "personal information" is a matter of statutory interpretation. *See* Maj. Op. at 15. Although it is true that the construction of a statutory term is for a court to resolve, the majority's rationale is too simplistic and does not account for Eleventh Circuit precedent.

The only case affirmatively cited by the majority, *United States v. Wilson*, 788 F.3d 1298, 1310 (11th Cir. 2015), did not involve a Sixth Amendment claim that the district court, through its instructions, took from the jury an issue relating to an element of the offense. *Wilson* addressed a sufficiency of the evidence claim, and it was in that context (and only in that context) that the panel engaged in statutory interpretation to determine whether the evidence presented by the government sufficed. The defendant's conviction for aggravated identity theft was premised on evidence that the names of victims were on tax refund checks, and we had to determine whether those names, together with forged signatures, constituted a "means of identification" under 18 U.S.C. § 1028A. *See Wilson*, 788 F.3d at 1310. Our closing comments made it clear that we were conducting post-trial

20

sufficiency review, and nothing more.  *See id.* at 1311 ("Here, the United States Treasury checks were made payable to six individuals and were endorsed with those individuals' forged signatures.  This *evidence was sufficient* to constitute a 'means of identification' to identify a specific individual under the statute.") (emphasis added).

## II

A criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  *United States v. Gaudin*, 515 U.S. 506, 510 (1995).  That means that a district court cannot—no matter how overwhelming (or undisputed) the evidence—direct a verdict by deciding a contested issue on an element of the charged offense.  *See Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) (explaining that the Sixth Amendment right to trial by jury "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty'").

The district court here, through its jury instructions, altered Congress' definition under § 2725(3) and prevented the jury from deciding a critical issue: whether the email addresses provided by Ms. Hastie constitute "personal information" under the DPPA.  And that, I believe, violated the Sixth Amendment. *See, e.g.*, *Mims v. United States*, 375 F.2d 135, 148 (5th Cir. 1967) ("An instruction

deciding a material fact issue as a matter of law adversely to the accused is regarded as a partial instructed verdict of guilty [that is] prohibited.").

## A

Whether email addresses are "personal information" may properly be characterized as a mixed question of law and fact. But juries in criminal cases also get to decide mixed questions when they concern an element of the offense at issue. *See Gaudin*, 515 U.S. at 510–15 (holding that the question of "materiality," in a false statement prosecution under 18 U.S.C. § 1001, must be submitted to the jury even though it is a mixed question of law and fact). After all, "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Id.* at 514. *See also Sparf v. United States*, 156 U.S. 51, 106 (1895) ("the jury [is] to apply the law as . . . declared to the facts as ascertained by them").

If the government presents evidence X at trial to establish an element of the offense, and the defendant on appeal argues that evidence X is insufficient to support his conviction, a reviewing court has to determine whether evidence X satisfies the statutory element, and that analysis may entail interpretation of a term in the statute. That is the sort of sufficiency analysis we conducted in *Wilson*, 788 F.3d at 1310–11, and in many other cases like it. *See, e.g.*, *United States v. Ross*, 458 F.2d 1144, 1145–46 (5th Cir. 1972). But the need to construe a statute on

appeal to conduct sufficiency review is not a license for a district court to tell the jury at trial that evidence X, as a matter of law, satisfies the contested statutory element. The "jury's duty to apply the law to the facts . . . implies the application of a general standard to the specific . . . facts as found by the jury." *Holland v. United States*, 348 U.S. 121, 141 (1954).

One of our cases, *United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984), properly illustrates these principles. *Goetz* involved a prosecution under 26 U.S.C. § 7203 for willful failure to file federal income tax returns. Because one of the elements of a § 7203 offense is the failure to file a return, the defendants wanted the jury to decide whether certain documents they had submitted to the IRS—tax forms containing the words "object self incrimination" in each space requesting income information—constituted "returns." *See id.* at 707. The district court ruled, as a matter of law, that the documents were not "returns" within the meaning of § 7203, and so instructed the jury. *See id*. The jury found the defendants guilty, but we reversed their convictions on appeal.

Although we agreed with the district court that the documents submitted by the defendants were not "returns" as a matter of law (so that the defendants could be properly convicted under § 7203 if the jury credited the government's evidence), we held that the jury should have been allowed to decide, in the first instance, whether the forms the defendants submitted were "returns":

> The [district] court correctly ruled that, as a matter of law, alleged tax returns which do not contain any financial information are not 'returns' within the meaning of [§] 7203. The court, however, went on to determine that the documents filed by the defendants did not contain any financial information, and concluded that, as a matter of law, these documents were not returns. In doing so, the lower court applied facts to the law, thus invading the province of the jury. In essence, the court directed a verdict as to one of the three elements of the alleged offense: failure to file a return.

*Id.* at 707–08. *See also id.* at 709–10 ("[T]he [district court] applied the facts to the law, leaving nothing for the jury to determine . . . . We conclude that there was reversible error in directing the jury that the documents filed by the defendants were not returns.").

Another of our cases, *Roe v. United States*, 287 F.2d 435 (5th Cir. 1961), is in line with *Goetz*. The defendant in *Roe* was convicted of selling and delivering securities without prior registration with the Securities and Exchange Commission. The district court instructed the jury that certain oil leases sold by the defendant were "investment contracts," and therefore "securities," within the meaning of the federal statute at issue. *See id.* at 437–38. We agreed with the district court that the leases, if proven, were "securities" under federal law, but held that the district court's instruction constituted reversible error:

> Thus we determine that, as a matter of law, the evidence of these transactions, if credited, would constitute the sale or delivery of an "investment contract," hence a "security" thereby requiring registration with the SEC. But the if in "if credited" is a big one. By its very nature, it is the peculiar facts of the setting which turns the offer from a mere sale of property into a sale of a security. That

means that the trier of fact, here a jury, must determine the issue. . . . [N]o fact, not even an undisputed fact, may be determined by the [j]udge.  The plea of not guilty puts all in issue, even the most patent truths.  In our federal system, the [t]rial [c]ourt may never instruct a verdict either in whole or in part.

*Id.* at 440.

In my view, *Goetz* and *Roe* require that we grant Ms. Hastie a new trial. Telling a jury that all email addresses categorically constitute "personal information" (what happened here) is no different than telling a jury that certain documents filed with the IRS do not constitute "returns" (what happened in *Goetz*) or that certain oil leases constitute "investment contracts" and, therefore, "securities" (what happened in *Roe*).  *See also Carothers v. United States*, 161 F.2d 718, 722 (5th Cir. 1947) (holding, in a prosecution for selling services at prices above a ceiling set by a federal official, that the district court improperly instructed the jury as to what the ceiling price was: "This assumption, that the [ceiling] price had been established as matter of law at less than the price the indictment charged [the] defendant with receiving, put the [court] in the position of deciding a fact issue material to [the] defendant's conviction, instead of submitting it to the jury for its determination, and thus deprived the defendant of his constitutional right of trial by jury."); *Brooks v. United States*, 240 F.2d 905, 906 (5th Cir. 1957) (ruling, in a prosecution for perjury based on alleged false statements made under oath to an IRS agent, that the district court committed plain error in instructing the jury

that the IRS agent in question was authorized to administer oaths under federal law: "[The instruction] deprived the jury of its function of determining whether or not . . . they believed beyond a reasonable doubt that [the agent] was an officer authorized to administer oaths in 1955 and thus violated appellants' constitutional right to a trial by jury as guaranteed by the Sixth Amendment."); *Mims*, 375 F.2d at 147–48 (concluding, in a prosecution for attempted bank robbery, that the district court committed plain error in instructing the jury that the evidence showed an attempt as a matter of law).[1]

## B

The majority says that Ms. Hastie's situation is distinguishable from *Goetz* and *Roe* because the district court here simply provided a definition of "personal information" at a "higher level of generality" that encompassed email addresses,

---

[1] For similar cases from other circuits, see, e.g., *United States v. White Horse*, 807 F.2d 1426, 1430 (8th Cir. 1986) (holding that the district court "invaded the jury's domain by declaring in [its] instructions to the jury that, as a matter of law, the [Cheyenne River Sioux Tribe] Telephone Authority constituted an Indian tribal organization under 18 U.S.C. § 1163"); *United States v. Mentz*, 840 F.2d 315, 320 (6th Cir. 1988) ("We agree with Menz that the [district court] invaded the jury's province by instructing that body, in clear and unequivocal language, that the banks were FDIC insured at the time the robberies occurred."); *United States v. Johnson*, 718 F.2d 1317, 1318 (5th Cir. 1983) (en banc) (ruling that the district court erred in instructing the jury that a particular document was a "security" as a matter of law, because "it is the jury's exclusive province to apply the law to the facts and determine whether the document is a security"). There is one unpublished case that employs the majority's rationale, but that case—like the majority here—does not cite any Sixth Amendment precedent to support its ruling. *See United States v. Franklin*, 298 F. App'x 477, 478–79 (6th Cir. 2008) (holding, in a prosecution for knowingly using a destructive device in furtherance of a crime of violence, that the district court did not err in instructing the jury "that, as a matter of law, a Molotov cocktail is a 'destructive device'"). *Cf. United States v. Grote*, 632 F.2d 387, 391 (5th Cir. 1980) (approving instruction telling the jury that "a taxpayer's return which does not contain financial information, enabling the [IRS] to determine the party's tax liability, if any, is not a return").

rather than instructing the jury that "the emails *provided by Ms. Hastie* constitute 'personal information.'" *See* Maj. Op. at 17.  I disagree.

The district court not only gave the jury a generic definition of "personal information"—"information that identifies an individual," D.E. 295 at 129—but it also told the jury in no uncertain terms that email addresses—the very things Ms. Hastie was accused of distributing—categorically constituted "personal information."   Because we "generally presume that jurors follow their instructions," *Penry v. Johnson*, 532 U.S. 782, 799 (2001), the jury here was left with "nothing . . . to determine," *Goetz*, 746 F.2d at 709, when it came to applying the law (the definition of "personal information") to the facts (the email addresses in question).

 "What [a court] is forbidden to do directly, [it] may not do by indirection." *Horning v. District of Columbia*, 254 U.S. 135, 139 (1920) (Brandeis, J., dissenting).  Telling the jury, without any limitation or room for debate, that email addresses constitute "personal information" as a matter of law is qualitatively the same as instructing the jury that the email addresses distributed by Ms. Hastie constitute "personal information."   In other words, if *all* email addresses are

"personal information," then the email addresses provided by Ms. Hastie necessarily are "personal information" too.[2]

Notably, the district court here let the jury decide whether Ms. Hastie—the Mobile County License Commissioner—was an "officer" or "employee" of a "State department of motor vehicles" under § 2721(a)(1).  *See* D.E. 295 at 129.  If the jury was allowed to decide that issue, which went to a different element of the DPPA offense, how could it be precluded from deciding whether email addresses constitute "personal information" under § 2725(3)?  I cannot think of a good reason, much less a valid constitutional one.

## III

A criminal conviction for a violation of the DPPA is punishable only by a fine, *see* § 2723(a), so in a sense this might be seen as a small and insignificant case.  But it is nothing of the sort, because it raises an important constitutional question that could have far-reaching consequences in future criminal trials.

As I read Sixth Amendment precedent, the district court violated Ms. Hastie's rights by instructing the jury, as a matter of law, that the "personal information" element of a § 2721(a)(1) offense categorically includes email

---

[2] In a way, the district court's instruction acted as a mandatory inference, which is also constitutionally problematic.  *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 446 (1978) (explaining how a mandatory inference "invade[s] [the jury's] factfinding function"); *United States v. Cochran*, 683 F.3d 1314, 1320 (11th Cir. 2012) ("we disapprove of a jury instruction that invades the jury's province by implicitly mandating an inference").

addresses.  I would grant Ms. Hastie a new trial, and therefore respectfully dissent

from the majority's affirmance of her DPPA conviction.[3]

---

[3] I recognize that the constitutional violation here is subject to harmless-error review, but the government has the burden of demonstrating harmlessness beyond a reasonable doubt, and it has not even tried to make such a showing.  *See generally Neder v. United States*, 527 U.S. 1, 7 (1999).  The jury, moreover, asked the district court whether it had to follow the definition of "personal information" found in the DPPA or the definition set forth in the jury instructions.  *See* D.E. 295 at 137–38; D.E. 302-4 at 3, 5. Given that query, it is not at all clear that the government could show that the Sixth Amendment error is harmless.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 25, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-14481-BB
Case Style:  USA v. Kimberly Hastie
District Court Docket No:  1:14-cr-00291-KD-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion